UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 20-cv-10860-LTS |
| | : | |
| DAMON ELLIOTT and | : | |
| PIPTASTIC LIMITED, | : | |
| | : | |
| | : | |
| Defendants, | : | |
| | : | |
| DSE RETAIL LIMITED | : | |
| PAUL ROSE | : | |
| UNIQUE ASSET MANAGEMENT LIMITED | : | |
| and | : | |
| SHARON ELLIOTT, | : | |
| | : | |
| | : | |
| Relief Defendants. | : | |
| | : | |

MOTION FOR LEAVE TO SERVE SUMMONS AND COMPLAINT BY OTHER
<u>MEANS</u>

Plaintiff Securities and Exchange Commission (the "Commission") respectfully moves

pursuant to Rules 4(f)(3) and 4(h)(2) of the Federal Rules of Civil Procedure ("FRCP") for leave

to serve Damon Elliott ("Elliott") and Piptastic Limited ("Piptastic") (collectively, the

"Defendants") and DSE Retail Limited, Paul Rose ("Rose"), Unique Asset Management

Limited, and Sharon Elliott (collectively, the "Relief Defendants") via email.  As set forth further

below, the Defendants and Relief Defendants are in foreign countries.[1]  Service by email is

reasonably calculated to give notice to each of them, and service by email provides an

---

[1] The Commission submits the Declaration of Ellen B. Moynihan ("Moynihan Decl.") in support of this Motion.

expeditious (and contactless)[2] method of effective service on foreign defendants.  Prompt service

is critical in this case because (a) the Commission has alleged a brazen, ongoing fraudulent

scheme; and (b) Rose appears to be making ongoing lulling statements to at least one investor—

who is in financial distress—after the filing of this case.  The Defendants and Relief Defendants,

therefore, should be compelled to answer the allegations quickly.  Prompt commencement of the

litigation (including discovery designed to identify any assets that can be preserved) will better

protect investors and advance the interests of justice.

## BACKGROUND

### I.      The Complaint

On May 6, 2020, the Commission charged the Defendants with defrauding investors of at

least $9 million in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") and

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5

thereunder.  Dkt. No. 1 ("Complaint").  Specifically, the Commission alleges that Elliott,

operating through Piptastic, defrauded at least 80 investors who had invested at least $9 million

with Piptastic.  Defendants represented that Elliott would use their money for "spread trading," a

form of market arbitrage in which the investor bets on the direction a market will move.

Complaint, ¶ 1.  In actuality, Elliott misappropriated the investors' money.  He perpetuated the

fraud by repeatedly lying to investors and by creating and sending fake account statements that

made it seem like the investors' money was not just safe, but growing in value.  Id., ¶¶ 2, 3.  The

fraud is ongoing.  See, e.g., id., ¶ 33; Moynihan Decl. ¶¶ 16-17 (describing text messages and

emails from Rose that post-date the filing of this Complaint).  The Commission also alleges that

---

[2]  Although pursuing contactless service is not the primary basis of this Motion, the Commission recognizes the
importance in minimizing human contact during the COVID-19 pandemic.  Because email service accomplishes that
goal, is reasonably calculated to give notice, and is not an extraordinary request, the Commission submits that email
service is the best mode of service in this case.

the Relief Defendants were unjustly enriched as a result of Elliott's transferring them investor money for no legitimate purpose.  Complaint, ¶¶ 27, 28.

## II.   The Defendants and Relief Defendants are Foreign

As set forth in the Complaint, Piptastic is a corporation based in London, England.  Id., ¶ 9; Moynihan Decl., ¶ 2.  Elliott was Piptastic's sole director.  Complaint, ¶ 9; Moynihan Decl., ¶¶ 3-4.  Elliott is a citizen of the United Kingdom, who resides in France with his wife, relief defendant Sharon Elliott.  Complaint, ¶¶ 10, 14; Moynihan Decl., ¶¶3, 5-6.

DSE Retail Limited is a corporation based in London, England; Elliott is its sole director. Complaint, ¶ 11; Moynihan Decl., ¶¶ 7-8.

Paul Rose is a British national and lives in the United Kingdom.  Complaint, ¶ 12; Moynihan Decl., ¶¶ 10-11.  Rose is the sole director of relief defendant Unique Asset Management, which is a corporation based in England.  Complaint, ¶ 13; Moynihan Decl., ¶¶ 12-13.

## RELIEF REQUESTED

## I.   Legal Standard

The Court has ordered the Commission to serve the Defendants and Relief Defendants with the Complaint by August 4, 2020.  Dkt. No. 4.  The Defendants and Relief Defendants each reside or have a principal place of business in a foreign country.  Moynihan Decl., ¶¶ 2, 5-7, 10-12.  Sections 4(f) and 4(h) of the Federal Rules of Civil Procedure enumerate the bases on which the Commission can effectuate service on defendants who are in a foreign country.  The options include service through the Hague Convention or "by other means not prohibited by international agreement, as the court orders."  FRCP 4(f)(1) and (3); see also FRCP 4(h)(2) (a foreign corporation, partnership, or association can be served by the means prescribed in FRCP 4(f)).

Here, the Commission seeks a Court order to serve the Defendants and Relief Defendants by email.

The *only* prerequisites for court-directed alternative service, including email, on an individual or entity in a foreign country under Rule 4(f)(3) are that the service method (1) is not prohibited by international agreement, and (2) comports with constitutional notions of due process. See, e.g., SEC v. Anticevic, No. 05 CV 6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009). Email service comports with due process considerations if doing so "apprise[s] [the Defendants and Relief Defendants] of the pendency of the action and afford[s] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). This broad standard "unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1017 (9th Cir. 2002); see also United States v. Besneli, No. 14 Civ. 7339, 2015 WL 4755533, at *1 (S.D.N.Y. Aug. 12, 2015) ("Courts have broad discretion in fashioning alternative means of service under Rule 4(f)(3)."); Anticevic, 2009 WL 361739, at *3 ("A court is 'afforded wide discretion in ordering service of process under Rule 4(f)(3).'").

## II.     Service by Email is Not Prohibited by International Agreement.

Rules 4(f)(3) and 4(h)(2) provide that an individual or entity in a foreign country may be served "by other means not prohibited by international agreement, as the court orders." The United Kingdom and France are both signatories to the Hague Convention. Moynihan Decl., ¶ 14. "The Hague Convention does not expressly prohibit e-mail service." SEC v. Jammin Java Corp., No. 2:15-cv-08921, 2016 WL 6650849, at *2 (C.D. Cal. Apr. 21, 2016). The Commission is not aware of international agreements with either the United Kingdom or France that would

4

prohibit email service.  See e.g., SEC v. Mustapha, 16-cv-04805-AJN, Dkt. No. 10 (S.D.N.Y. 2016) (authorizing service of the defendant, a citizen of the United Kingdom, by email).

### III.    Service by Email Satisfies Due Process Considerations.

The Defendants and Relief Defendants will not be prejudiced if the Court orders service by email.  As an initial matter, both Elliott and Rose are aware of this case.  Moynihan Decl., ¶¶ 15-17 and Ex. K, attached to the Moynihan Decl.  And, since filing the Complaint, the Commission has spoken with two Piptastic investors who said, in substance, that they spoke with Rose after the case was filed and that Rose was aware of the Complaint.  Moynihan Decl. ¶¶ 16-17.  In fact, Rose appears to have made additional lulling statements to at least one investor acknowledging that he had been sued.  Id., ¶ 16.

Further, service of the Defendants and Relief Defendants by email comports with traditional notions of due process because the Commission believes that the Defendants and Relief Defendants will, in fact, receive and review the emails attaching the Complaint and summons.  Elliott and Rose have used several email addresses when communicating with investors, including as recently as March 2020 (for Elliott) and May 2020 (for Rose).  Id., ¶¶18-19.  A message to Elliott at one of these addresses prompted the response from Elliott's U.K. law firm, strong evidence that the email address is valid.   And Sharon Elliott provided an email address to a third party when opening a trading account, evidencing the address's authenticity.  Id., ¶ 20.  In 2017, the provider of that trading account used that email account to send Sharon Elliott account statements.  Id., ¶ 21.  The Commission has no reason to believe that Sharon Elliott's email account is now inactive.  As a practical matter, she is married to Elliott, who is aware of the lawsuit, and thus Sharon Elliott is almost certainly also aware of this case.

Serving the Complaint and Summons on Elliott, Rose, and Sharon Elliott via their email accounts would satisfy due process considerations.  See Fed. Trade Comm'n v. Pecon Software, Ltd, Nos. 12 Civ. 7186, 7188, 7191, 7192, 7195, 2013 WL 4016272, at \*5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.") (citations omitted).

Elliott is the only officer or director listed on Piptastic's and DSE Retail Limited's corporate records as of 2020 (at one point, Sharon Elliott was listed as Piptastic's secretary), and Rose is the only officer or director listed on Unique Asset Management's corporate records. Moynihan Decl., ¶¶ 3-4, 8-9, 13.  Service on Elliott and Rose would, therefore, constitute effective service on Piptastic, DSE Retail Limited, and Unique Asset Management too.  See FRCP 4(h)(1)(b).

### IV.    Service by Email is Not a Last Resort.

The Court should allow service by email at this stage in the litigation because "service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  Rio Props., Inc., 284 F.3d at 1015 (alterations and citation omitted); see SEC v. Shuang Chen et al., 19-cv-12127-WGY, Dkt. No. 11 (D. Mass 2019) (ordering service by email before all other options were exhausted); SEC v. Knox, 18-cv-12058-RGS, Dkt. No. 9 (D. Mass. 2018) (same).  The Commission is not required to attempt other means of service before the Court could order alternative service by email.  See, e.g., Besneli, 2015 WL 4755533, at \*1 ("[I]t is not necessary for the Government to first attempt service under the Hague Convention . . . ."); Anticevic, 2009 WL 361739, at \*3 ("A plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3).").

**CONCLUSION**

The Commission seeks to serve the Defendants and Relief Defendants by email because it will provide effective, and comparatively quick, notice in a case that should be litigated promptly. If the Commission is required to wait for effective Hague Convention service, there could be significant delays in the Commission's efforts to seek justice for the victims here. Indeed, even under ordinary circumstances, Hague Convention service is more time-consuming than email service. Because of the ongoing COVID-19 global health pandemic, Hague Convention service (like everything else) has been substantially disrupted. Traditional Hague Convention service (effected through the jurisdiction's Central Authority) has been suspended in Great Britain.[3] In France, the situation is less clear, but it appears that its Central Authority may have closed without posting or providing any information to the public about its operating status, thus also effecting a suspension of service.[4] Since the Hague Convention also authorizes service "by postal channels" absent objection from the receiving country, and neither Great Britain nor France objects, that would ordinarily be a second option for serving the defendants. In order to prove such service, the communication is ordinarily sent through international, registered mail, requiring a signature. Now, however, international carriers, including FedEx and UPS, have indicated that they have suspended their signature requirements. See, e.g.,

https://www.fedex.com/en-us/coronavirus.html ("We've suspended Signature Required for most shipments"); https://www.ups.com/us/en/about/news/important-updates.page? ("In the interest of

---

[3] "The COVID-19 outbreak has inevitably led to delays in the service of documents from other Contracting States. For the moment service of judicial and extra-judicial documents is suspended, but as soon as we are able to do so, staff in the England and Wales Central Authority will work to complete requests for service as promptly as they can." https://www.hcch.net/en/states/authorities/details3/?aid=278

[4] The Central Authority page for France was last updated in January 2019 and has no COVID-19 related information. https://www.hcch.net/en/states/authorities/details3/?aid=256 Calls placed to the Central Authority by Commission staff on May 13 went unanswered, and French courts appear to be closed due to the pandemic. See https://www.skadden.com/insights/publications/2020/03/coronavirus-covid19-french-courts-close.

employee and customer safety, UPS's Signature Required guidelines are temporarily being

adjusted such that consignees will no longer need to sign for UPS Signature Required

deliveries.").

For the reasons set forth herein, the Commission respectfully requests that the Court

GRANT this motion and authorize the Commission to serve the Defendants and Relief

Defendants by email pursuant to the "other means" contemplated in Federal Rule of Civil

Procedure 4(f)(3).

SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/ Eric A. Forni
Eric A. Forni
         Senior Trial Counsel
Rachel Hershfang
         Senior Trial Counsel
Ellen B. Moynihan
         Senior Investigations Counsel
33 Arch St., 24th Floor
Boston, MA 02110
Phone: (617) 573-8827 (Forni direct)
Fax: (617) 573-4590 (fax)
ForniE@sec.gov (Forni email)

Dated: May 29, 2020

**Service**

Although the Defendants and Relief Defendants have not appeared in this case, consistent
with the Commission's position that the Defendants and Relief Defenadnts receive emails at the
addresses noted in this Motion, copies of this motion, the Moynihan Declaration, and all
attachments will be promptly sent to the Defendants and Relief Defendants via those email
addresses.

Daetd: May 29, 2020                                    /s/ Eric A. Forni
                                                       Eric A. Forni