UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 20-10860-LTS |
| DAMON ELLIOTT, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON DAMON ELLIOTT AND SHARON ELLIOTT'S
MOTION TO DISMISS (DOC. NO. 26)

December 7, 2020

SOROKIN, J.

Plaintiff Securities and Exchange Commission ("the SEC") brought a securities fraud enforcement action against Defendants Damon Elliott and Piptastic Limited; and Relief Defendants DSE Retail Limited, Paul Rose, Unique Asset Management Limited, and Sharon Elliott. Doc. No. 1.[1] The Complaint alleges violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and claims for equitable relief. Id. ¶ 43–53. Pro se Defendant Damon Elliott and pro se Relief Defendant Sharon Elliott ("the Elliotts") filed a motion to dismiss, asserting a variety of defenses under Rule 12(b) of the Federal Rules of Civil

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

Procedure. See Doc. Nos. 26, 37. The SEC responded, Doc. No. 30, and Damon Elliott replied, Doc. No. 42.[2] For the reasons set forth below, the Elliotts' Motion to Dismiss is DENIED.

## I. FACTS

The facts are drawn from the allegations in the complaint, in accordance with the standard applicable to motions to dismiss.

The SEC alleges that Damon Elliott, operating through Piptastic Limited, fraudulently raised at least $9 million, including $5.3 million from at least 30 investors in the United States. Doc. No. 1 ¶ 1. At least one of these investors resides in Massachusetts and communicated with Mr. Elliott over email. Id. ¶ 15. Mr. Elliott held himself out as an expert in a type of speculative trading called "spread trading." Id. ¶ 1. While he led investors to believe he was generating large returns, he did not use investors' money for spread trading. Id. ¶ 2. Instead, the money was used to pay principal and profits to previous investors to maintain the appearance that the venture was successful; Mr. Elliott also kept a substantial amount of money for himself and the Relief Defendants, including his wife, Sharon Elliott. Id. ¶¶ 3, 31. The Elliotts are citizens of the United Kingdom who reside in France. Id. ¶¶ 10, 14.

## II. DISCUSSION

The Elliotts assert four defenses in their Motion to Dismiss: improper service, lack of personal jurisdiction, improper venue, and failure to state a claim for which relief can be granted. See Doc. No. 26 at 2–3. Below, the Court considers each defense in turn. Because the Elliotts are proceeding pro se, the Court construes their filings liberally. See Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004). Even so, "pro se status does not insulate a party from

---

[2] To the extent that the Court considers Damon Elliott's Reply, its contents apply only to Mr. Elliott and not to Sharon Elliott because it has not been signed by Mrs. Elliott. Damon Elliott is pro se and can only represent himself. See L.R. 83.5.5(b); see also Doc. No. 36.

complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

### A. Service of Process

The Elliotts first assert that Sharon Elliott has not received a summons or a copy of the Complaint and that even in a global pandemic, service by mail was possible and could have been attempted. Doc. No. 26 at 2. The Court construes this as raising a defense under Rule 12(b)(5) for insufficient service of process. See, e.g., Connolly v. Shaw's Supermarkets, Inc., 355 F. Supp. 3d 9, 14 (D. Mass. 2018) ("a motion to dismiss for improper service of process under Fed. R. Civ. P. 12(b)(5) challenges the 'mode of delivery'") (citation omitted). Once adequately challenged, "plaintiffs have the burden of proving proper service." Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992). A return of service "generally serves as prima facie evidence that service was validly performed." Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008).

It is undisputed that the Elliotts are foreign citizens and live outside of the United States. Rule 4 of the Federal Rules of Civil Procedure provides that an individual in a foreign country may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . [; or] (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). The SEC moved under Rule 4(f)(3) for leave to serve Sharon Elliott via email on May 29, 2020, Doc. No. 6, which the Court allowed, Doc. No. 7. "Rule 4(f)'s plain language unambiguously indicates that the only limit it imposes on court-directed service under Rule 4(f)(3) is that the means must not be prohibited by international agreement." Forum Fin.

3

Grp. v. President & Fellows of Harvard Coll., 199 F.R.D. 22, 23–24 (D. Me. 2001). Moreover, "Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel and by email." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 429 (1st Cir. 2015). Service by email to an individual residing in the United Kingdom or France is not prohibited by international agreement. See Doc. No. 6 at 4–5. Nor do the Elliotts allege that it is prohibited. In short, the Elliots have not demonstrated that the Court authorized improperly service by email, nor have they otherwise called into question that decision.

Additionally, the SEC has filed a return of service certifying that Sharon Elliott was served by email. Doc. No. 12. While the Elliotts claim that Mrs. Elliott never received the Complaint or summons, they do not provide any evidence suggesting that the email address to which the SEC sent the email is incorrect or invalid. See Blair, 522 F.3d at 111–12 (noting that defendant may adduce "rebuttal evidence to refute any presumption of valid service"). Without rebuttal evidence, the Elliotts' conclusory statement that service failed here is insufficient to rebut the plaintiff's presumption of proper service. Mrs. Elliott was properly served. In addition, while Mrs. Elliott raises the concern that she may not have had time to review and respond to the Complaint, Doc. No. 26 at 2, the record belies that contention. Mrs. Elliott has filed both a motion to dismiss and an answer in this matter, and she has not sought additional time to make either filing.

**B. Personal Jurisdiction**

The Elliotts allege that the Court has no personal jurisdiction over either of them because they are citizens of the United Kingdom, reside in France, and have not "operated in, solicited investments or otherwise in the USA or to US citizens." Doc. No. 26 at 2. The plaintiff has the

4

burden of showing that the court has personal jurisdiction over a defendant. See, e.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). When the court considers a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, as it does here, the court applies a "prima facie standard."[3] See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under that standard, the plaintiff must "go beyond the pleadings" and make a "showing of personal jurisdiction . . . based on evidence of specific facts set forth in the record." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992) (citation omitted). In assessing whether this burden is met, the court "is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." Swiss Am. Bank, 274 F.3d at 619 (citation and internal quotation marks omitted).

Jurisdiction for the SEC's claims lies under Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, both of which authorize nationwide service of process. When a statute provides for nationwide service of process, "the jurisdictional inquiry focuses on whether [the defendants] had sufficient contacts with the United States as a whole, rather than with just Massachusetts, such that this Court can exercise jurisdiction over [the defendants]." Filler v. Lernout, 337 F. Supp. 2d 298, 309–10 (D. Mass. 2004); see also United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992).

An exercise of personal jurisdiction must comply with both statutory limitations and the due process requirements of the U.S. Constitution. See, e.g., Boit, 967 F.2d at 675. "A district

---

[3] No party has asked for an evidentiary hearing on the Motion to Dismiss and the Court has determined from the papers that no hearing is necessary.

court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Specific jurisdiction requires "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Id. General jurisdiction, in contrast, "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Swiss Am. Bank, 274 F.3d at 618 (citation and internal quotation marks omitted). Here general jurisdiction has no application; any personal jurisdiction the Court may exercise is specific jurisdiction.

In the context of specific jurisdiction, the Constitution requires that a defendant have maintained "minimum contacts" with the forum, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Whether minimum contacts exist is assessed through a tripartite test.[4] First, "the litigation [must] result[] from alleged injuries that 'arise out of or relate to'" the defendant's in-forum activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted). Second, there must be "'some act by which the defendant purposefully avails

---

[4] The SEC contends that a "conducts and effects" test governs the determination of whether the Court may exercise personal jurisdiction. See Doc. No. 30 at 4. The SEC cites no caselaw in support of that proposition. The statute cited by the SEC does not contain any language describing the required showing for personal jurisdiction; it does describe the requirements for the courts to exercise subject matter jurisdiction when it recites that the "district courts of the United States . . . shall have jurisdiction of an action or proceeding" concerning extraterritorial conduct with a substantial effect within the United States. See Section 929P(b) of the Dodd-Frank Act, 15 U.S.C. § 78aa(b). Accordingly, the Court does not apply the approach the SEC proposed. The Court notes that subject matter jurisdiction has neither been challenged by the Elliotts nor is it in question based on the Court's independent review. See SEC v. A Chi. Convention Ctr., LLC, 961 F. Supp. 2d 905, 911 (N.D. Ill. 2013) (noting that "Section 929P(b) . . . merely addresses subject-matter jurisdiction").

itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.'" Id. at 2183 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Third, the defendant's conduct and activities much be such that it is "'reasonable . . . to require the [defendant] to defend'" a suit in the chosen forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting Int'l Shoe, 326 U.S. at 317). The Court addresses each personal jurisdiction requirement as to each Defendant separately.

### 1. Personal Jurisdiction Over Damon Elliott

To establish personal jurisdiction over Damon Elliott, the SEC has submitted an affidavit from an SEC forensic accountant and documents proffering the following evidence:

- that Damon Elliott served as a signatory and account holder of Piptastic bank accounts, Doc. No. 31 ¶ 5;
- that Damon Elliott solicited investments from Finder A, who Mr. Elliott knew to work in Boston, Massachusetts, id. ¶ 7, Doc. No. 31-1;
- that Finder A invested his own money in Piptastic, as well as the money of other individuals whom Finder A introduced to Mr. Elliott, Doc. No. 31 ¶ 8;
- that Damon Elliott traveled to Florida, where he met with an existing investor ("Florida Investor") and discussed Piptastic, id.;
- that the Florida Investor invested additional funds in Piptastic following his conversation with Mr. Elliott, id.;
- that 14 investors from the United States invested money from the United States in Piptastic, totaling over $5 million, id. ¶ 6; and
- that Relief Defendant Paul Rose introduced six to twelve United States-based investors to Piptastic, id. ¶ 9.

The Elliotts have not submitted any affidavits. In their papers, they contend that "neither Mr Elliott or Mrs Elliott, have operated in, solicited investments or otherwise in the USA or to US citizens." Doc. No. 26 at 2. They have attached to their Motion to Dismiss a letter from a United Kingdom attorney to the United Kingdom's Serious Fraud Office stating that Mr. Elliott has "taken the trouble to self-report" the fraud and requesting further guidance. Doc. No. 26-1. In support of his Reply, Mr. Elliott also submitted an email between Paul Rose and an investor and a document listing the address of Piptastic's London headquarters. See Doc. Nos. 42-1, 42-2.

The Court applies the familiar three-part framework described above to determine whether it may exercise personal jurisdiction over Damon Elliott. First, the SEC's securities fraud claims arise out of Mr. Elliott's contacts with the United States. "This 'flexible, relaxed standard' . . . requires only that the claim have a 'demonstrable nexus' to the defendant's forum contacts." Knox v. MetalForming, Inc., 914 F.3d 685, 690–91 (1st Cir. 2019) (citations omitted). The SEC alleges that Mr. Elliott falsely represented to investors that their funds were being used for spread trading while he misappropriated the money. A demonstrable nexus exists between these allegations and Mr. Elliott's contacts with the United States because based on the SEC's proffer of evidence, Mr. Elliott made false representations to United States investors, through email with United States citizens and orally during a trip to the United States, and he misappropriated money that originated in the United States. That one or more of Mr. Elliott's agents may have made some of these false representations to United States investors rather than Mr. Elliott himself in no way limits the arm of the Court. "For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002).

Second, Damon Elliott purposefully availed himself of the benefits of the United States. Purposeful availment occurs "when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, 274 F.3d at 623–24. The First Circuit has noted "two cornerstones of purposeful availment" are foreseeability and voluntariness. Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). The defendant need not reside in or even spend substantial time in the forum—in cases where the defendant has not physically entered the forum, First Circuit courts may "look for some other indication that the defendant reached into the forum, such as mail or telephone contacts." Swiss Am. Bank, 274 F.3d at 622. Here, Mr. Elliott physically entered the United States—the SEC has proffered evidence that he went to Florida and met with an investor there, and that this trip involved discussions of Piptastic and led to further investment from the Florida Investor. Mr. Elliott also had email contact with Finder A, a citizen of the United States, about investing in Piptastic. These contacts are sufficient to establish that Mr. Elliott reached into the forum. Nothing before the Court suggests that these contacts were involuntary or that Mr. Elliott would have been unable to foresee that he would be subject to the jurisdiction of United States courts about these actions when arranging to receive funds from United States-based investors.

Third, the Court's exercise of personal jurisdiction here is reasonable. The Court looks at five gestalt factors when assessing reasonableness: "(1) the defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social policies." Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45 (D. Mass.

1997) (citing Burger King Corp., 471 U.S. at 477). The first factor is "only meaningful where a party can demonstrate some kind of special or unusual burden" because "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Damon Elliott has alleged no special burden here. The second factor favors jurisdiction because the United States has an interest in the enforcement of its securities laws. The third factor favors jurisdiction because "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). Finally, the fourth and fifth factors favor jurisdiction: while the United Kingdom has an interest in the resolution of this dispute as well, there is no indication that there is any ongoing case in the United Kingdom[5] and its potential interest does not outweigh the United States' interest in resolving cases related to a violation of its securities laws, arising from the solicitation of investment funds in the United States from United States investors. The gestalt factors favor a finding of personal jurisdiction over Mr. Elliott.

Finally, Damon Elliott contends that he was acting on behalf of Piptastic, such that his actions accrue only to Piptastic. This is incorrect. Even if Mr. Elliott ostensibly acted on behalf of the company, his actions still subject him to personal jurisdiction if they satisfy the tripartite test described above. See, e.g., Interface Grp.-Massachusetts, LLC v. Rosen, 256 F. Supp. 2d 103, 105 (D. Mass. 2003) (noting that personal jurisdiction requirements "may be satisfied when a corporate officer transacts in-forum business *either* in his personal capacity *or* solely on behalf of the corporation") (emphasis original). The Court has personal jurisdiction over Mr. Elliott.

---

[5] Mr. Elliott submitted a letter discussing that he has purportedly self-reported the fraud in this case to the United Kingdom's Serious Fraud Office, Doc. No. 26-1, but he provided no further information other than that he believes the Office may be conducting preliminary investigations, Doc. No. 26 at 3.

### 2. Personal Jurisdiction Over Sharon Elliott

The SEC has named Sharon Elliott as a Relief Defendant only. It does not seek a judgment that she violated securities laws. Rather, it seeks an equitable order requiring her to disgorge ill-gotten gains of the Defendants, which were allegedly and improperly transferred to Mrs. Elliott. See Doc. No. 1 ¶¶ 6, 49–53. The Securities and Exchange Acts "confer general equity powers upon the district courts [so that] [o]nce the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy." SEC v. Thibeault, 80 F. Supp. 3d 288, 293 (D. Mass. 2015) (citation omitted). Specifically, "[f]ederal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." Smith v. SEC, 653 F.3d 121, 128 (2d Cir. 2011) (citation omitted). The cases cited by the SEC do not directly answer the question of whether the Court may reach assets located overseas and controlled by a foreign person not subject to personal jurisdiction in the United States. However, the Court need not resolve this question now, because the Court will reach it only if the SEC prevails or makes a sufficient showing to obtain preliminary injunctive relief. To the extent that Damon Elliott has de facto control over the funds, he may be subject to an order to restore them. Cf. Thibeault, 80 F. Supp. 3d at 295 (allowing repatriation order where defendant had "considerable control" over funds transferred to accounts in the Philippines). Accordingly, that portion of the Motion to Dismissed based on a lack of personal jurisdiction over Relief Defendant Sharon Elliott is DENIED WITHOUT PREJUDICE.

### C. Venue

The Elliotts allege that venue is improper because they are French residents, they may not be able to travel because of the COVID-19 pandemic, and more investors are affected by this matter in the United Kingdom than in the United States. Doc. No. 26 at 2–3.

Because this is a federal securities action, venue is governed by Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, and Section 27 of the Exchange Act of 1934, 15 U.S.C. § 78aa. See, e.g., Abeloff v. Barth, 119 F.R.D. 315, 319 (D. Mass. 1988). Under the Exchange Act, venue is proper in "the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. Such an act "'need not constitute the core of the alleged violation'" and need not be illegal, so long as it "'represents more than an immaterial part of the alleged violations.'" S-G Sec., Inc. v. Fuqua Inv. Co., 466 F. Supp. 1114, 1121 (D. Mass. 1978) (quoting Sohns v. Dahl, 392 F. Supp. 1208, 1215 (W.D. Va. 1975)). "There is venue in a securities case 'where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district.'" Fox v. Dream Trust, 743 F. Supp. 2d 389, 396 (D.N.J. 2010) (quoting Oxford First Corp. v. PNC Liquidating Corp., 372 F. Supp. 191, 197 (E.D. Pa. 1974)).

Here, the SEC alleges that at least one investor affected by Damon Elliott's fraud resides in Massachusetts, and that Elliott communicated with this investor over email, knowing the investor worked in Boston. These allegations are sufficient for proper venue in the District of Massachusetts. Elliott purportedly caused false or misleading information to have been transmitted into this judicial district. Moreover, Elliott would have been aware that this investor resided in Massachusetts because the information was listed in the investor's email signature, see Doc. No. 31-1 at 1, and other courts have found that venue is proper when "'defendants knew or

had reason to know their allegedly false information would be read and relied upon by potential plaintiffs in the forum.'" Fox, 743 F. Supp. 2d at 396 n.4 (quoting Oxford, 372 F. Supp. at 197–98).

"Where claims are alleged under both the Exchange Act and the Securities Act, satisfaction of the broader venue provision of the Exchange Act is sufficient to make venue appropriate for actions arising from the Securities Act as well." SEC v. Spencer Pharm. Inc., 57 F. Supp. 3d 127, 138 (D. Mass. 2014) (citing Liles v. Ginn-La W. End, Ltd., 631 F.3d 1242, 1253–54 (11th Cir. 2011)). The SEC satisfies the venue provision of the Exchange Act, which is sufficient to establish that Massachusetts is an appropriate venue for all claims in this suit.

### D. Failure to State a Claim

In their Motion to Dismiss, under the heading of "failure to state a claim," the Elliotts raise a constellation of concerns, including that Plaintiff did not consider investors in the United Kingdom or others who allegedly received a beneficial interest when drafting the Complaint. Doc. No. 26 at 3. Under Rule 12(b)(6), the Court may only grant a motion to dismiss for failure to state a claim upon which relief can be granted if the complaint fails to support a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 560 (2007)). In reviewing pleadings, the Court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Here, the SEC's Complaint sufficiently alleges violations of the Securities Act and the Exchange Act as well as claims for equitable relief against the Elliotts. The issues the Elliotts raise of whether the SEC brought claims against all potential parties have no bearing on whether the SEC has properly alleged claims for relief against these defendants. The SEC correctly notes that "the

13

possibility that other entities or individuals could have been charged is not a basis to dismiss a properly pled case against the Elliotts." Doc. No. 30 at 16. See, e.g., SEC v. Spencer Pharm. Inc., No. 12-CV-12334-IT, 2014 WL 5112078, at *2 (D. Mass. Oct. 10, 2014) (noting that the Exchange Act "grants discretion to the SEC to choose whether or not to initiate enforcement actions"); see also Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 786 (9th Cir. 2013) ("The decision of whether or not to bring an enforcement action is plainly discretionary."). The Elliotts' concerns do not prevent the case against them from going forward.[6]

Finally, in Damon Elliott's Reply, Mr. Elliott claims that Plaintiffs "fail[ed] to make the distinction and separation of Damon Elliott, individual vs Piptastic Limited, both of which are separate legal entities and therefore cannot be treated the same." Doc. No. 42 at 1. Plaintiffs allege in the Complaint that Damon Elliott was Piptastic's director and point to his actions and written statements as evidence of securities fraud. See Doc. No. 1. Plaintiffs are not treating Mr. Elliott and Piptastic "the same"—Damon Elliott can be properly alleged to have violated the Exchange Act and the Securities Act by actions he took when running Piptastic.[7] Both Acts apply to "persons," which include individuals and not just corporate entities. See 15 U.S.C. § 77b(a)(2) (defining "person" for the purpose of the Securities Act as "an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof"); 15 U.S.C. § 78c(a)(9) (defining

---

[6] The scope of damages and the allocation of liability among responsible persons present possible questions which are premature to address at this stage of the lawsuit.

[7] Of course, the Acts apply to corporate defendants as well, but both Piptastic Limited and DSE Retail Limited have defaulted. See Doc. Nos. 34, 35.

"person" for the purpose of the Exchange Act as "a natural person, company, government, or political subdivision, agency, or instrumentality of a government").

### E. Forum Non Conveniens

Finally, as part of their assertion that venue is improper, the Elliots urge the Court to transfer this case to the United Kingdom. Doc. No. 26 at 3. Construing their pro bono filing liberally, the Court considers this assertion to be one of forum non conveniens. "The doctrine of forum non conveniens permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is . . . available in another country that is fair to the parties and substantially more convenient for them or the courts." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719 (1st Cir. 1996) (citing Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 947 (1st Cir. 1991)). "But since there is a strong presumption in favor of the plaintiff's forum choice, the defendant must bear the burden of proving both the availability of an adequate alternative forum, and the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992) (citations omitted); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).

The Elliotts note that they have "self reported" to the Serious Fraud Office in the United Kingdom and add that "[t]o our knowledge they are conducting preliminary investigations at this point in time." Doc. No. 26 at 3. This statement is not sufficient to show that the United Kingdom is an adequate alternative forum. Nor do the Elliotts establish that the absence of a transfer would be seriously unfair—their financial inability to engage counsel would pose an obstacle regardless of forum, and COVID-19 has not prevented civil litigation from proceeding in the District of Massachusetts.

Ultimately, while the Elliotts do not successfully allege forum non convenience, it does not mean that their concerns about COVID-19 as parties living abroad are irrelevant. The Court takes the pandemic seriously and the District has put in place a variety of procedures to keep litigants safe. At this point, all appearances in civil cases (apart from trial) are being conducted by video conference or telephone. The Court does not anticipate that the Elliotts will have to travel to Boston in the near future for this case. The Elliotts may raise COVID-related concerns as they emerge later in the litigation, but the pandemic does not prevent this case from going forward.

### III. CONCLUSION

For the foregoing reasons, Defendant Damon Elliott and Relief Defendant Sharon Elliott's Motion to Dismiss is DENIED. The Clerk shall schedule a Rule 16 conference to occur by video conference forthwith.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge